FILED

JOHN D. ROGERS (SBN: 289688)
LAW OFFICES OF JOHN D. ROGERS
4000 MacArthur Blvd. East Tower Suite 615
Newport Beach, California 92660
Telephone: (949) 625-4487
Facsimile: (949) 625-7760
E-Mail: John@JohnDRogersLaw.com

2019 SEP 23 PM 1:05

Attorney for Defendant
KAMAL BIJANPOUR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 19-MJ-3956 |
|---|---|
| Plaintiff, | **DEFENDANT'S OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION** |
| v. | |
| KAMAL BIJANPOUR, | Hearing Date: September 24, 2019 |
| Defendant. | Hearing Time: 2:30 p.m.. Courtroom: 790, 7th Floor Roybal Honorable Patrick J. Walsh |

TO THE HONORABLE PATRICK J. WALSH, CHIEF MAGISTRATE JUDGE AND THE OFFICE OF UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:

Defendant Kamal Bijanpour, individually and by and through his counsel of record, John D. Rogers, hereby files this memorandum in opposition to the Government's request for detention.

Respectfully submitted,

Dated: September 23, 2019

LAW OFFICES OF JOHN D. ROGERS

By _____
JOHN D. ROGERS
Attorney for Defendant
KAMAL BIJANPOUR

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 4

II. STATEMENT OF FACTS ............................................................................... 4

III. DR. BIJANPOUR'S BACKGROUND, CAREER, SIGNIFICANT TIES TO LOS ANGELES, AND ARREST CONDUCT SUPPORT PRETRIAL RELEASE ..................................................................................... 5

    A. LEGAL PRINCIPLES AND STANDARD ............................................. 5

    B. DR. BIJANPOUR IS NOT A FLIGHT RISK NOR A DANGER TO THE COMMUNITY ................................................... 7

    C. ADDITIONAL FACTORS SUPPORTING PRETRIAL RELEASE ....... 10

IV. CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Stack v. Boyle*, 342 U.S. 1 (1951) .................................................................. 5, 6

*United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991) ......................................... 6

*United States v. Hanson*, 613 F.Supp.2d 85 (D.C. 2009) ..................................... 8

*United States v. Himler*, 797 F.2d 156 160 (3d Cir. 1986) .................................. 5

*United States v. Karni*, 298 F.Supp.2d 129 (D.C. 2004) ...................................... 7

*United States v. Motamedi*, 767 F.2d 1403 (1985) ............................................ 10

*United States v. Salerno*, 481 U.S. 739 (1987) .................................................. 5, 6

**Statutes**

18 U.S.C. § 3142(b) ................................................................................................ 6

18 U.S.C. § 3142(c)(1)(B) ...................................................................................... 6

18 U.S.C. § 3142(e) ................................................................................................ 6

18 U.S.C. § 3142(f) ................................................................................................. 6

18 U.S.C. § 3142(g) ................................................................................................ 6

18 U.S.C. § 3142(j) ................................................................................................. 5

26 U.S.C. § 5861(d) ................................................................................................ 5

I.

INTRODUCTION

On September 20, 2019, Defendant Kamal Bijanpour ("Dr. Bijanpour") appeared for his initial appearance. The Government filed a request for detention and pretrial services recommended Dr. Bijanpour be detained pending trial. The Court granted defense counsel's request to continue the detention hearing to file a written opposition to the Government's request for detention.

II.

STATEMENT OF FACTS

On August 14, 2019, border search authority intercepted and searched a package from China addressed to Dr. Bijanpour.[1] ATF identified the content of the package as a firearm supressor. Further investigation led to agents authoring a search warrant for two of Dr. Bijanpour's residences in Los Angeles.

On September 18, 2019, federal agents from Homeland Security Investigations executed a search of Dr. Bijanpour's residence located at 1209 S. Spaulding Ave., Los Angeles, CA. Agents detained Dr. Bijanpour and a subsequently searched his residence yielding 12 suspected firearm suppressors, 17 firearms, and methamphetamine located on top of Dr. Bijanpour's computer desk. All firearms seized were registered to Dr. Bijanpour and lawfully owned by him. The firearms discovered at this location were only seized because agents discovered methamphetamine on the premises.

On the same day, agents executed a search of Dr. Bijanpour's second residence located at 900 W. Temple St., Apt. 744b, Los Angeles, CA. Agents discovered several firearms and a suspected suppressor.

In a post-*Mirandized* statement, Dr. Bijanpour stated the firearm parts including the suspected suppressors were purchased from Wish.com. He purchased the

---

[1] The Statement of Facts is a summary of the affidavits filed in support of a search warrant, and complaint filed on September 20, 2019 in case number 19-MJ-03956.

4

accessories from Wish.com because it was cheaper than buying the parts from a gun store. The suppressors were advertised on Wish.com as "motorcycle sound suppressors." Prior to his purchases, he researched YouTube and found "motorcycle sound suppressors" would work as a silencer or muzzle brake on his firearms. He made purchases from different vendors on Wish.com. When he received the suspected suppressors, he found they did not fit with any of his firearms and were therefore useless. Dr. Bijanpour denied knowing that purchasing and owning an unregistered suppressor was illegal. Moreover, since he was able to purchase the items online, he believed it "must be legal."

On September 20, 2019, Dr. Bijanpour appeared for his initial appearance charged with a violation of 26 U.S.C. § 5861(d) – possession of an unregistered firearm suppressor.

### III.
### DR. BIJANPOUR'S BACKGROUND, CAREER, SIGNIFICANT TIES TO LOS ANGELES, AND ARREST CONDUCT SUPPORT PRETRIAL RELEASE

A. <u>LEGAL PRINCIPLES AND STANDARD</u>

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This sentiment was ingrained in our justice system prior to the passage of the Bail Reform Act, *see Stack v. Boyle*, 342 U.S. 1, 3 (1951), and it remains an essential part of our system today. In keeping with this fundamental principle of justice, Congress passed the Bail Reform Act of 1984 ("Act") which is a "narrowly-drafted statute" that focuses its pretrial detention provision on "a small but identifiable group of particularly dangerous defendants." *United States v. Himler*, 797 F.2d 156 160 (3d Cir. 1986). The Act *does nothing to alter or limited the presumption of innocence before trial.* 18 U.S.C. § 3142(j) (emphasis added).

///

> Under the Act, a judicial officer:
>
> Shall order the pretrial release of [a defendant] on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court ... unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

18 U.S.C. § 3142(b). If the conditions outlined in subsection (b) will not serve to assure the appearance of the defendant at trial or will endanger another person or the community, the judicial officer shall order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions" necessary to meet the requirements of the Act. 18 U.S.C. § 3142(c)(1)(B); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Thus, the Act limits the application of pretrial detention to a small category of offenders in a limited number of circumstances. *See United States v. Salero*, 481 U.S. at 747 (noting that the Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes").

In deciding whether the available conditions will reasonably assure the defendant's appearance, the Court should consider the four factors set forth in the Act: (1) the nature and circumstances of the offense, including it is violent or nonviolent in nature; (2) the characteristics of the person, including their character, family ties, employment, length of residence in the community, community ties, past conduct, criminal history, and record of court appearances; (3) the weight of the evidence; and (4) the danger the defendant poses to the community if release. See 18 U.S.C. § 3142(g). However, it should be noted that this is not an 18 U.S.C. § 3142(e) presumption case. It is clear that the Government bears the burden to establish that no condition or combination of conditions of release would reasonable assure the safety of the community by clear and convincing evidence. See 18 U.S.C. § 3142(f).

As this Court is aware, pretrial detention is not merely a restriction on the liberty of a defendant. The United States Supreme Court has long held that fundamental Fifth and Sixth Amendment rights may also be irreparably compromised by such detention.

6

*See Stack*, 342 U.S. at 4. The *Stack* court detained the history and purpose of bail pending trial, stating, in pertinent part:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning.

*Id.* at 4.

### B. DR. BIJANPOUR IS NOT A FLIGHT RISK NOR A DANGER TO THE COMMUNITY

Federal courts have repeatedly embraced the "strong presumption against detention" that is so ingrained in our society and granted release to defendant's over the Government's strong and tenacious opposition.

For example, in *United States v. Karni*, 298 F.Supp.2d 129 (D.C. 2004), the defendant was charged in a criminal complaint with violations of the Export Administration Act ("EAA") and the IEEPA[2]. *Id* at 130. The complaint alleged charges that were far more severe than those in the present case. Karni allegedly acquired weapons capable of triggering nuclear weapons and illegally exported them to Pakistan, via South Africa. While Karni had no criminal history and no reports of mental impairments, he had no ties to the United States. Specifically, the defendant was an Israeli national who had resided in South Africa for the last 18 years, had a wife, children, and owned a home in Cape Town. *Unlike Dr. Bijanpour*, there was "no evidence presented establishing that Defendant has ever lived in this country, owned property here, or that he has any family or community ties in the United States. Defendant was only in this Country in order to participate in a ski vacation." *Id.* at 132.

---

[2] IEEPA is an abbreviation for the International Emergency Economic Powers Act.

7

Nonetheless, the Court found that while there "is a risk that Defendant will flee" there were conditions of release that would "safeguard the government's ability to prosecute this individual" and ensure his "continued presence in the D.C. area." *Id.*

In another serious case supporting release of Dr. Bijanpour, in *United States v. Hanson*, 613 F.Supp.2d 85 (D.C. 2009), the defendant carried dual U.S. and Chinese citizenship, was charged with conspiracy to violate the IEEPA and ERA. *Id.* at 87. The allegations were much more serious because the defendant was alleged to have personally carried illegally exported unmanned aerial vehicle autopilot components from the United States into Germany, where she handed them to an acquaintance who forwarded them to China. *Id.* Those parts were alleged by the U.S. government to be "used to simulate stealth planes and cruise missiles to test air defense detection systems, and potentially could be armed." *Id.* Therefore, unlike Dr. Bijanpour, the parts Hanson sold were themselves potentially sophisticated weapons.

In considering Hanson's possible release, the Court focused on the defendant's ties to the United States. Like Dr. Bijanpour, Hanson had long-standing ties to the United States – e.g., she came to the U.S. in 1989, lived in San Francisco and New York where she married, owned a home in California and rented a home in Washington D.C. Despite living abroad for business and personal reasons for almost 10 years, the Court did not find strong circumstantial evidence that Hanson intended to flee. Accordingly, the Court released Hanson, imposing conditions that were similar to

*Karni*.[3]

Like *Hanson*, there is no direct or circumstantial evidence strongly favoring Dr. Bijanpour's clear interest in fleeing the jurisdiction or his intent to do so. Though Dr. Bijanpour is a citizen of the Netherlands, he will surrender his passport to Pretrial Services thereby alleviating any flight concern. Additionally, Dr. Bijanpour is gainfully employed as practicing psychiatrist for nearly 20 years in Los Angeles; he owns a medical office having 10 employees in Long Beach, California; he financially supports his three children who live locally and who he regularly sees; and he owns a home in Los Angeles. Accordingly, in light of his strong familial and professional ties to Los Angeles, any risk of nonappearance is extremely remote and weigh in his favor for release.

Next, several factors mitigate the concern of Dr. Bijanpour's risk to public safety. *First*, Dr. Bijanpour has no prior criminal history nor is there evidence of threats or violence in his past. Moreover, Dr. Bijanpour has been a law-abiding and hardworking person who has built a successful practice for the last 20 years. *Second*, the Court may fashion appropriate conditions of release to assure that Dr. Bijanpour's risk of potential danger is being intensively monitored – i.e., attending weekly or biweekly therapy sessions; do not own or possess danger weapons or firearms; impose

---

[3] The conditions of release imposed in Hanson were as follows: (1) participation in the High Intensity Supervision Program with global positioning system (GPS) monitoring under the supervision of the D.C. Pretrial Services; (2) release into the Home Confinement Phase of the program, meaning she should reside in her home with her husband; (3) keep the GPD equipment properly charged and maintained; (40 wear a GPS ankle bracelet at all times and agree not to tamper with or remove it; (5) leave her home only after receiving authorization from PSA for verified appointments with her lawyers or doctors needed; (6) expressly prohibited from entering or being in the immediate vicinity of Union Station or any airport without permission from the Court; (7) prohibited from leaving the United States; (8) notification from the electronic monitoring vendor to certain special agents immediately upon receipt of an infraction or possible infraction; (9) PSA should call chambers if alerted to any infraction or possible infraction during business hours; (10) agreement not to seek to obtain any new passport during the pendency of the matter and to surrender any passports; and (11) defendant shall post her home in California as security subject to immediate forfeiture should there be any infraction of the conditions.

internet restrictions prohibiting online purchases; do not consume alcohol or controlled substances; and submit to random drug testing. *Third*, in addition to Violet Mercado posing as a willing surety, it is anticipated that other colleagues will attend the hearing on this motion and attest to Dr. Bijanpour's good moral and peaceful character,[4] and pose as willing sureties.

## C. ADDITIONAL FACTORS SUPPORTING PRETRIAL RELEASE

Dr. Bijanpour's arrest conduct weigh in favor of his release. Moreover, he did not exhibit anger or animosity towards law enforcement. He never posed as a threat to their safety, attempted to flee, thwarted their investigation by any means, nor use any physical violence. Instead, Dr. Bijanpour was forthcoming with agents and answered all their questions. His conduct of ordering firearm accessories online demonstrates an utter lack of sophistication because he did not believe his actions were illegal.[5] Furthermore, Dr. Bijanpour is not a leader or organizer of a scheme, conspiracy, or enterprise, nor is he involved in street sale distribution of the suspected suppressors.

## IV.
## CONCLUSION

The Act requires that in a pretrial posture, the Government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the Court's duty is to fashion appropriate conditions that permit Dr. Bijanpour to remain out of custody during the preparation of his defense,

---

[4] Defense counsel requested a hearing date for Tuesday September 24, 2019 at 2:30 p.m. Unfortunately, defense counsel will unlikely be able to submit character letters in support of pretrial release before Dr. Bijanpour's detention hearing. However, defense counsel has requested that Dr. Bijanpour's business liaison, Violet Mercado, arrange for the attendance of close friends and colleagues of Dr. Bijanpour to address this Court.

[5] Dr. Bijanpour is not relying on the fact that he did not believe ordering suspected firearm suppressors was illegal as a defense in this hearing. This is merely to show that Dr. Bijanpour did harbor bad intentions when ordering the accessories – i.e., lack of ill-will or evil intent to commit a crime.

while safeguarding against flight or community danger. A close call should result in Dr. Bijanpour's release. *See United States v. Motamedi*, 767 F.2d 1403, 1405-06 (1985). Accordingly, it is clear that conditions can be fashioned in this case that would result in Dr. Bijanpour's appearance at trial and safety of others. Therefore, he respectfully asks for release subject to conditions this Court deems appropriate.

                                    Respectfully submitted,

Dated: September 23, 2019        LAW OFFICES OF JOHN D. ROGERS

By _____
JOHN D. ROGERS
Attorney for Defendant
KAMAL BIJANPOUR

## PROOF OF SERVICE

I, John D. Rogers, declare:

That I am a citizen of the United States and a resident of or employed in the County of Orange, California; that my business address is the Law Offices of John D. Rogers, 4000 MacArthur Blvd., East Tower Suite 615, Newport Beach, California 92660; that I am over the age of 18; and that I am not a party to the action of the United States of America v. Kamal Bijanpour; that I am employed by a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION**

[X] By hand delivery on September 23, 2019, addressed as follows:

**Office of the United States Attorney**
**312 N. Spring St. 1200 Floor**
**Los Angeles, CA 90012**

This certificate is executed on September 23, 2019 at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

_____
John D. Rogers